UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATONYA WHITE,

    Plaintiff,                                  Case No. 17-cv-12102

vs.                                              HON. MARK A. GOLDSMITH

EQUITY EXPERTS.ORG, LLC,

    Defendant.
_____/

**OPINION & ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 28)**

This matter is before the Court on Plaintiff LaTonya White's motion for summary judgment (Dkt. 28). The motion is fully briefed. Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court denies White's motion.

**I.    BACKGROUND**

LaTonya White resides in Summerville, South Carolina, where she is a member of the Cedar Springs Homeowners' Association ("Cedar Springs"). White fell behind on payments to her homeowners' association, and on February 9, 2017, she received a letter from Defendant EquityExperts.Org ("Equity"), purporting to collect a debt on behalf of Cedar Springs. 2/9/2017 Letter, Ex. 2 to Pl. Mot. (Dkt. 28-2). The letter stated that White owed $2,147, which included a $350.00 collection cost assessed by Equity. Plaintiff's Statement of Material Facts ("SMF") ¶ 1 (Dkt. 28). She received similar letters from Equity in March, May, and July of 2017; each time, the letter reflected a greater balance owed and charged her for the collection costs. 3/23/2017 Letter, Ex. 3 to Pl. Mot. (Dkt. 28-3); 5/19/2017 Statement, Ex. 5 to Pl. Mot. (Dkt. 28-5); 7/10/2017

1

Letter, Ex. 6 to Pl. Mot. (Dkt. 28-6).

Cedar Springs' Declaration of Rights, Restrictions, Affirmative Obligations, Covenants and Conditions Applicable to Cedar Springs and Providing for Cedar Springs Association, Inc. ("Declaration") provides that the property owners must pay regular annual and special assessments to the association. It also says that the property owner must pay interest on the assessments, and the costs of collection:

> Declarant covenants and each Owner of any Lot, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to all the terms and provisions of this Declaration and to pay to the Association: (1) regular annual assessments or charges; and (2) special assessments or charges for the purposes set forth in this Article. Regular annual assessments and special assessments are to be fixed, established and collected from time to time as hereinafter provided. <u>All assessments, together with interest thereon and all costs of collection, shall be a continuing charge upon the Lots against which the assessments are made</u>. Each assessment, together with interest thereon and all costs of collection, as hereinafter provided, shall also be the personal obligation of the Owner of such Lot at the time when the assessment becomes due and payable.

Declaration, Ex. 7 to Pl. Mot., at 9 (Dkt. 28-7) (emphasis added).

The agreement between Cedar Springs/Bragg and Equity contains the following relevant "Duties & Obligations":

> 2. COLLECTION AGENT is authorized on behalf of the ASSOCIATION, and pursuant to Limited Powers of Attorney, to collect the delinquent assessments from the responsible party, plus any and all costs of collection charged by COLLECTION AGENT, as outlined in our standard fee structure addendum which is updated and distributed semi-annually.
>
> . . .
>
> 4. COLLECTION AGENT will not charge ASSOCIATION for any costs of collection services of files that have a secured interest in real estate unless otherwise agreed in advance. These costs of collection are authorized by ASSOCIATION and will be added to the Unit Owner's balance with the association to be collected by

COLLECTION AGENT.

Equity Experts Community Association Collection Agreement (the "Collection Agreement"), Ex. 1 to Pl. Reply, at 1 (Dkt. 32-1). Under "Termination & Damages," this agreement also provided,

> 1. File return or representation termination for any reason, permitted only upon 30 days prior written notice by either party to the other, shall terminate and release the parties, with no further obligation, except for payment of the fees set forth in Schedule A.

Id. at 2. "Addendum A" lists the following "fees required upon termination or suspension of services":

| | |
|---|---|
| Intent to Record Lien Letter | $50 |
| Preparation of Lien & Draft to Owner | $75 |
| Constant Contact | $75 |
| Notice of Intent to Foreclose and Draft to Owner | $75 |
| Publication of Foreclosure Publication Estimate | $450 |

Id. at 4. A printout from Equity's website states that "Equity Experts, a homeowners association collections agency, improves the health of communities by following a proven process with no out-of-pocket costs for the collection of association debts." Website, Ex. 8 to Pl. Mot. (Dkt. 28-8).

White filed a complaint on June 28, 2017, arguing that Equity's attempts to obtain collection costs from her violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 et seq. She now seeks summary judgment on her claim.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact

exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

To prevail on a claim pursuant to the FDCPA, a plaintiff must show that (1) she is a "natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3); (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1962a(5); (3) the defendant is a "debt collector," within the meaning of 15 U.S.C. § 1692a(6); and (4) the defendant violated a provision of the FDCPA. Dunn-Mason v. JP Morgan Chase Bank, N.A., No. 11-13419, 2013 WL 5913684, at *11 (E.D. Mich. Nov. 1, 2013). The parties dispute

4

only this last element of the claim. White claims that Equity violated § 1692f of the FDCPA, which prohibits unfair or unconscionable debt practices, including "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). She also claims that Equity violated §§ 1692e(2)(A) and (10) of the FDCPA by making false representations of the character, amount, or legal status of a debt and by making false representations to collect or attempt to collect a debt.

White's argument is that Equity does not have authority to recover its own collection charges from her. Pl. Mot. at 9. She stresses that no contract exists between her and Equity. Id. at 10. White agrees that she is responsible for collection costs incurred by Cedar Springs, but contends that Cedar Springs did not incur any collection costs from Equity. Pl. Reply at 2 (Dkt. 32). Instead, pursuant to its business model, Equity performed its services with no out-of-pocket costs to Cedar Springs. Id. at 3. Thus, White argues that Equity was not permitted to collect from her any other fees that were not borne by Cedar Springs, and when Equity listed the collection charges in the letters sent to White, it violated the FDCPA.[1]

Equity responds that White agreed to be bound by the Declaration when she took title to her property, and the Declaration requires payment of "all assessments, together with interest thereon and all costs of collection." Def. Resp. at 11 (Dkt. 31) (quoting Declaration at 9) (emphasis in Def. Resp.). It contends that when White failed to pay the amounts she owed to Cedar Springs, Cedar Springs forwarded her unpaid balance to Equity for collection. Id. at 12. Under the Collection Agreement, the costs of collection incurred by Equity would eventually be borne by

---

[1] White also argues that, even if the costs of collection could be passed on to Cedar Springs, Equity was only able to charge the costs agreed to in Schedule A of the Collection Agreement, and those costs do not correspond to the amounts charged to her in the various letters and statements. Pl. Reply at 5-6.

5

Cedar Springs. Id. at 15. Therefore, pursuant to the terms of the Declaration, the costs could properly be charged up front to White. Id. Equity argues that it did not violate the law by informing White as such in its letters.

White's claim depends on the interpretation of the Declaration and the Collection Agreement. Both parties agree that the Declaration authorizes Cedar Springs to charge White for costs of collection that Cedar Springs incurred, but dispute whether Cedar Springs ever actually incurred any collection costs under the Collection Agreement. See Def. Resp. at 15 (" . . . Equity Experts' costs – as costs that would eventually be borne by the Association – could be properly charged up front to Plaintiff."); Pl. Reply at 2 ("Plaintiff has never denied that she is responsible for any collection costs incurred by the Association. However, the Association has not incurred any collection costs from Defendant.") (emphasis in original).

White fails to show, as a matter of law, why it matters whether Cedar Springs incurred collection costs under the Collection Agreement. The plain language of the Declaration states that "[a]ll assessments, together with interest thereon and all costs of collection, shall be a continuing charge upon the Lots against which the assessments are made." Declaration at 9. There is no indication that the costs of collection must be incurred by Cedar Springs in order to be charged to White, and "[t]his Court cannot read terms into the Contract which are not there." Diab v. Textron, Inc., No. 07-11681, 2008 WL 4857960, at *4 (E.D. Mich. Nov. 6, 2008).

Thus, regardless of whether they are paid by Equity or passed on to Cedar Springs, Equity's costs of collection "shall be a continuing charge upon the Lots against which the assessments are made." A reasonable interpretation of the Declaration – although not necessarily the only reasonable interpretation – is that White agreed to pay any costs of collection associated with her failure to pay her obligations to Cedar Springs, regardless of the entity that incurred them.

Such an interpretation finds support in other contexts where the law allows recovery of costs not actually incurred by the recovering party. For example, in the attorney-fee context, a losing party may be obligated to pay attorney fees even when the prevailing party did not and will not actually incur such fees. See, e.g., Brinn v. Tidewater Transp. Dist. Comm'n, 242 F.3d 227, 234-235 (4th Cir. 2001) ("[C]ourts have consistently held that entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding."). A jury could find that the Declaration authorized a similar arrangement here – White may be obligated to pay collection fees even if Cedar Springs did not actually incur them.

Accordingly, White has failed to show, as a matter of law, that the costs are not "expressly authorized by the agreement creating the debt," 15 U.S.C.§ 1962f(1), or that Equity made false representations regarding the debt, 15 U.S.C. § 1962e. See Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598 (7th Cir. 2004 ) ("[A] debt collector may include attorney fees and collection costs in the dunning letter when the underlying contractual relationship between the debtor and the creditor provided for the recovery of such fees and costs."); Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) ("[W]hen a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may . . . state those fees and costs and include that amount in the dunning letter.")

Both parties point to Sparks v. EquityExperts.Org, LLC, No. 17-11330 (E.D. Mich.), another case in this district where a homeowner challenged Equity's collection of its own collection costs. In Sparks, the court, faced with an agreement similar to the Declaration, was troubled by the fact that Equity "does not explain whether, under the Association's governing documents, a third party could recover collection costs and fees that would not be passed on to the

7

Association." Sparks v. EquityExperts.Org, LLC, No. 17-11330, 4/25/2018 Order at 3 (Dkt. 29) (E.D. Mich.). The court was "unconvinced that Defendant could unilaterally charge its own costs . . . to Plaintiff. Nothing about the Association's papers seems to 'expressly authorize' some then-uninvolved third party to collect its own collection costs." Id. (emphasis in original). Although that statement was made in an order directing the parties to prepare for a conference, the same view was adopted in a later opinion granting summary judgment, in part, to Equity. After analyzing the homeowners' association's contract with Equity, the court found in favor of Equity in part, concluding that "[i]n the event that either [the homeowners' association or Equity] cancelled the agreements . . . the Association had a contractual obligation to pay any remaining costs of collection." Sparks v. EquityExperts.Org, LLC, No. 17-11330, 2018 WL 3387245, at *3 (E.D. Mich. July 12, 2018). The court reasoned that "[u]nder the terms of the Association's governing documents and Defendant's contract with the Association, Defendant's costs – as costs that would eventually be borne by the Association – could properly be charged up front to Plaintiffs." Id.

In neither opinion did the court in Sparks explain why it was important to determine whether the homeowners' association bore the costs of collection, either initially or ultimately. It appears to have been simply an assumption by that court that the fact was critical. As this Court's analysis demonstrates, that circumstance may be important to a factfinder after considering all of the circumstances, but nothing in the law makes that factor a dispositive or necessary one. Based on the limited record before this Court, a reasonable interpretation of the plain language of the agreement between the homeowners' association and the homeowner allows for Equity to recover the costs of collection. A jury could find that the Declaration expressly authorizes the collection of collection costs, regardless of which entity incurs such costs, and therefore Equity did not violate

8

15 U.S.C. §§ 1692e(2)(A), (10), or 1692f.

Accordingly, White is not entitled to summary judgment on her claim.

### IV. CONCLUSION

For the reasons provided, Plaintiff LaTonya White's motion for summary judgment (Dkt. 28) is denied.

SO ORDERED.

Dated: March 6, 2019　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 6, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　s/Kristen MacKay for Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager